Filed 12/24/19; Certified for Publication 1/23/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | B297762 (Los Angeles County Super. Ct. No. DK09916A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.J., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge. Reversed and remanded.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Appellant M.J. (father) appeals from an order terminating his parental rights[1] under Welfare and Institutions Code section 366.26.[2] Father contends inadequate notice of the jurisdiction and disposition hearing led to his inability to appear at the hearing, the court's failure appoint an attorney to represent him, and an order denying him reunification services. Father also contends that once he appeared and had an attorney, the court erroneously denied his attorney's petition under section 388, which sought to address the earlier due process violation. Finally, father contends that because there was no finding of unfitness against him, the order terminating his parental rights is in error. Respondent Los Angeles County

---

[1] The court's order also terminated the parental rights of Y.F. (mother). Mother is not a party to this appeal.

[2] Statutory references are to the Welfare and Institutions Code.

2

Department of Children and Family Services (Department) contends any notice error was harmless, the court did not abuse its discretion in denying father's section 388 petition, and earlier findings against father are sufficient to support the termination of parental rights.

## INTRODUCTION/OVERVIEW[3]

Before this dependency proceeding started in early 2015, father was in the custody of the California Department of Corrections and Rehabilitation (CDCR), serving a six-year sentence for a 2011 robbery. He was housed in a privately contracted correctional facility in Mississippi due to prison overcrowding. In late April 2015, he received untimely notice of the jurisdiction and disposition hearing, and promptly responded with letters to the court and the social worker stating he wished to appear in court, as well as a form stating he was exercising his right to appear. Likely unaware of father's letters, the court did not continue the hearing date or appoint counsel to represent father. Even though the petition contained no allegations against father, the court removed the children from both parents' custody and ordered that father would not receive reunification services, under section 361.5, subdivision (e)(1).

---

[3] This introduction is an abbreviated summary of father's role in the dependency case. A more detailed description of the facts and procedure of the entire case is provided in the next section.

Sometime in early 2016, father was returned to prison in California. A Department social worker personally served him with notice of the court's scheduled 366.26 hearing. Father indicated he wanted to appear at the hearing. Father also filed a petition under section 388—representing himself because he did not have appointed counsel— notifying the court that he was scheduled to be released from prison in six months and asking the court to order reunification services and visits. The court summarily denied father's request. There is nothing in the record to show that father ever waived his right to appear or his right to counsel while he was incarcerated.

Father was transported to appear at the section 366.26 hearing in August 2016, and a court-appointed attorney specially appeared on his behalf. Less than two weeks later, the attorney filed another section 388 petition, challenging the adequacy of notice for the jurisdiction and disposition hearing, and asking the court to vacate the dispositional findings and orders to allow father his constitutional right to participate in the dependency case. The motion was not heard until December 2016, when the court denied it.

Father initiated contact with his children sometime before July 2016. After his release from prison in November 2016, father began weekly monitored visits with the children. The 366.26 hearing was repeatedly continued for more than two years. Father continued his weekly visits until his parental rights were terminated on April 30, 2019.

4

Father appeals the April 30, 2019 order terminating his parental rights to all four children, but he also attacks the validity of the May 4, 2015 disposition order denying reunification services, as well as the December 12, 2016 order denying his second section 388 petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Events pre-dating the Department's dependency petition*

Mother and father are the parents of four children: Al.J. (born October 2007), Me.J. (born October 2008), An.J. (born August 2010), and Mi.J. (born July 2011). According to the maternal grandmother, father was a known gang member and mother's family did not approve of her relationship. Mother and father lived with father's family until father was arrested and incarcerated, at which point mother moved back. Father was likely imprisoned for a felony in 2011, and was moved to Mississippi due to prison overcrowding.

In March 2015, the Department detained the children from mother after she admitted to using methamphetamine while the children were in her care.

### 2. Detention hearing – March 2015

The Department filed a petition under section 300, subdivision (b), based on mother's drug use.  The petition contained no allegations concerning father.

A March 13, 2015 Addendum report stated that the Department was "unable to contact the father due to his incarceration in Tallahachie County Correctional Facility in Mississippi."  The clerk's transcript includes a March 12, 2015 printout from a CDCR webpage indicating that father was being held at the Tallahatchie County Correctional Facility in Mississippi.  A different CDCR webpage printout lists the Tallahatchie facility as one of several facilities "contracted with Corrections Corporation of America."

The court held a detention hearing on March 13, 2015.  It appointed counsel for mother, declared father a presumed father, and ordered the Department to prepare a statewide removal order.  The court scheduled the jurisdictional hearing for April 24, 2015, with a trial date of May 4, 2015.

### 3. Jurisdiction and disposition report - April 2015

In its April 24, 2015 jurisdiction and disposition report, the Department reported that father was "incarcerated in State Prison in Mississippi" and that efforts to contact father had not been successful.  Addressing the court's order to prepare a removal order for father's appearance at the jurisdiction and disposition hearing, the Department

6

explained that "[e]fforts to have prisoners transported to court when out of state are not available to [the Department]."[4]

In the section giving the Department's evaluation, the Department again stated that father is "in prison in Mississippi." The Department noted a previous report that father would be incarcerated for six years for assault and battery, but then stated "details as to his incarceration are currently unknown but are continuing to be investigated." The children reported no contact with father and had very little recollection of him. The older two children reported father was in jail because he did something bad, and the oldest stated "I think he got a guy he thought he was a bad guy and my dad hit him."

---

[4] The complete paragraph concerning father in the Department's report reads: "Father [is] incarcerated in State Prison in Mississippi. The facility where father is incarcerated has been contacted via telephone, in an attempt to interview father, however to date of this writing, messages left have not been returned. [Father] has not made contact with the Department, a notice of hearing and contact letter was sent to [father] however to date of this writing, he has not responded. The Department did not submit for a removal order due to him being incarcerated out of state. Efforts to have prisoners transported to court when out of state are not available to [the Department]."

### *4. Notice and request to appear – April 2015*

On April 21, 2015, the Department mailed to father a copy of the petition and notice that the jurisdiction and disposition hearing would be held April 24, 2015. The notice informed father of his right to appear and his right to counsel, and included language indicating that the Department had recommended against family reunification for father as to Al.J., An.J., and Me.J., but in favor of family reunification for father as to Mi.J.. The notice did not mention any hearing scheduled for May 4, 2015.

On April 24, 2015, the court continued the jurisdiction and disposition hearing to the existing trial date of May 4, 2015, and found notice proper.

On April 27, 2015, father wrote two letters, one addressed to the court and the other addressed to the social worker identified in the notice sent to father.[5] In both letters, father requests to appear at the next court date, notes that he expects to be released by next year, and expresses concern about the possibility that his children will be taken away from him. The letter to the court states in relevant part: "I am requesting to be at the next court date

---

[5] As it appears in the clerk's transcript, the second letter has the name "Alicia Mena" written at the top in writing different than father's. The envelope is addressed to "Amelia Meneses" at the Department. The record contains envelopes for both letters, and the envelopes are postmarked April 28, 2015.

for my children.  If you people could get back at me ASAP I need to know what's going on with my children.  I [father] asking for right for my children.  I get out next year and I shouldn't pay by looseing [*sic*] my children over what the mother's done.  I am a good father so please hear me out."

Father's desire to appear at the jurisdiction and disposition hearing is also documented in the responses on Judicial Council form JV-451 "Prisoner's Statement Regarding Appearance at Hearing Affecting Parental Rights" which appears later in the appellate record.  The form references the April 24, 2015 hearing date and includes father's signature, but no date.  Father's responses indicate he already has a juvenile dependency attorney who will represent him at the hearing,[6] and that he understands he has a right to be physically present and is asserting that right.[7]

---

[6] Since father's signature on the form is not dated, it is unclear whether father made this statement in error or after the fact with reference to the April 24, 2015 hearing.  The form contains three options:  "a. I already have a juvenile dependency attorney who will represent me at this hearing. [¶]  b. I want a juvenile dependency attorney appointed to represent me at this hearing.  [¶]  c. I do not want to be represented, and I give up my right to be represented by an attorney at this hearing."  The check mark appears next to option a.

[7] In his opening and reply briefs, father notes that with the exception of father's signatures, the form has checkmark responses that appear to have been filled out by computer,

At the May 4, 2015 hearing, there was no mention of father's letters or the completed JV-451 form.[8]

### 5. *Jurisdiction and disposition hearing – May 2015*

At the May 4, 2015 jurisdiction and disposition hearing, the court found notice proper for both parents.[9] Counsel appeared for mother, who was granted reunification services. The court did not appoint counsel for father.

and that it appears father signed the portion that was intended to be completed by a prison official, averring that the facility lacked videoconferencing or telephone technology that complied with the relevant California Rules of Court. Ultimately, there is no evidence the completed form was provided to the court until it was included as an attachment to the Department's October 31, 2016 response to the section 388 petition filed by father's counsel in September 2016.

[8] In fact, none of the Department's reports mention father's response and request to appear until after the court held its first hearing under section 366.26 (in August 2016) and father's counsel filed a section 388 petition (in September 2016) to bring the notice violation to the court's attention. The Department's October 31, 2016 interim review report attaches the second letter (along with a third letter dated September 20, 2016) and father's completed JV-451.

[9] While there is no mention of notice in the reporter's transcript, the court's minute order states that notice was given to all appropriate parties as required by law.

10

Regarding father, the court noted he was "[i]ncarcerated out of state.  If he contacts the Department he's ordered to do parenting and individual counseling and weekly random drug and alcohol testing."  After being prompted by the Department's attorney, the court ordered no family reunification pursuant to section 361.5, subdivision (e), adding that father's visits would be monitored after he was released from custody.

The court clerk's proof of service shows that all parties *except father* were served with a copy of the May 4, 2015 minute order and advisement of rights.  Father's name and address were not included on the proof of service.

### 6. *Six-month hearing November 2015*

The Department's six-month review report states that father's family reunification services were terminated on May 4, 2015, pursuant to section 361.5, and that father remained incarcerated in Mississippi, according to a search on the CDCR's Inmate Locator service on October 7, 2015.  Father was served with notice of the six-month hearing, but there is no evidence in the record that he was served with a copy of the minute order or any notice of rights or advisements.

### *7. Twelve-month hearing – May 2016*

In its twelve-month review report, the Department noted that a March 7, 2016 search on father revealed he was incarcerated within California, at the California City Correctional Facility.[10]  The report also stated that father's family reunification services were terminated on May 4, 2015, pursuant to section 361.5.

At the May 2, 2016 twelve-month review hearing, the court ordered reunification services terminated for mother and father, directed the Department to initiate an adoption home study for maternal grandmother within one week, and scheduled a hearing under section 366.26 for August 29, 2016.  Father was properly served with notice of the twelve-month hearing, a copy of the minute order, and an advisement of rights.

On May 10, 2016, the Department personally served father with notice of the scheduled August 29, 2016 hearing under section 366.26, and father indicated he wanted to appear at the hearing.

---

[10] We see no information in the record about when or why father was moved from the Tallahatchie facility to the California City facility, but we infer from the inmate record searches in the record that the move took place sometime between October 7, 2015, and March 7, 2016.

### *8. Father's reunification efforts – 2015 and 2016*

Sometime before July 2016, presumably once he returned to California, father resumed contact with his children, making phone calls and sending birthday cards. From the record, it does not appear the Department provided any assistance with these contact efforts, nor was the Department aware of father's contact with the children until sometime after July 2016.  According to maternal grandmother, Me.J. was interested in having contact with her father, but the other three children were less interested in his phone calls and cards.

While in prison in Mississippi, father had earned certificates of completion for KET Life Skills, Microsoft Powerpoint, Word, and Excel.  Upon returning to California, between May and July 2016, father completed a program called InsideOut Dad, an evidence-based program designed by the National Fatherhood Initiative to help incarcerated fathers develop pro-fathering attitude, knowledge, and skills. Part of the program assists incarcerated fathers "[d]evelop a plan for successfully reentering the lives of their children and families upon release."

Representing himself while still incarcerated, father filed a section 388 petition in June 2016, seeking reunification services and stating he would be released from state prison in November 2016.  The court summarily denied father's motion.

Father was released from prison on November 5, 2016, and met with the social worker on November 14, 2016. The social worker explained to father that the court had terminated his family reunification services at the disposition hearing on May 4, 2015, but had granted him enhancement services upon release from prison, including drug and alcohol testing, counseling and parenting classes. The social worker provided father with referrals and explained the details of father's monitored visitation with the children. Father said he was willing to comply with court orders, and he planned to get a job, participate in programs, and enroll in culinary school. He wanted to be a part of his children's lives and to be a father to them.

Father tested negative for drugs and alcohol twice in November 2016, but then failed to show for nine scheduled drug tests from December 2016 through February 2017.

### 9. *Attorney specially appears for father at hearing under section 366.26 – August 29, 2016*

The court held the first of several hearings under section 366.26 on August 29, 2016.[11] Father appeared while

---

[11] We note that many of the continuances of the section 366.26 hearing were connected to lack of prompt cooperation by maternal grandmother in the adoption process. Despite the fact that the statutory scheme encourages prompt action so as not to delay permanency for dependent minors, obstacles not related to father's reunification efforts led to a

still in custody, and attorney Amy Meier made a special appearance on his behalf.[12]  The Department requested a 120-day continuance for the adoption home study to be completed.  In response to a question from the court about when he would be out of custody, father said he should be getting out in about a month, before December.  The court continued the hearing to December 12, 2016, and did an in and out order in case father was in custody at that time.

### 10. *Father's attorney promptly seeks to correct due process violations – September 2016*

Two weeks after the August 29, 2016 hearing, Meier filed a new petition on behalf of father under section 388, challenging the court's jurisdiction for lack of proper notice. The petition relied on *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 490, which held that a petition under section 388 could be used to challenge lack of adequate notice.  The petition argued notice was improper because under Penal Code section 2625, father had a right to appear unless he signed a waiver indicating he did not want to appear.  Because there was no waiver in the court file, the

_____

two-and-a-half-year delay in conducting the section 366.26 hearing.

[12] We find no order appointing Meier to represent father, but the law firm she worked for continued to represent father in subsequent hearings.

court lacked jurisdiction to enter dispositional findings and orders without first permitting father to appear. The petition asked the court to vacate all dispositional findings and orders and to permit father to exercise his constitutional right to participate in the dependency proceeding. The court scheduled the matter for a hearing.

On October 31, the Department filed an interim review report responding to father's section 388 petition.[13] The Department argued that it did not submit a removal order because prisoners cannot be transported when out of state, and that the Tallahatchie facility had indicated it could not provide compliant video or telephone conferencing technology.[14] The Department contacted a correctional counselor at CDCR, who explained that father was housed out of state as part of a program to help reduce prison overcrowding. The correctional counselor explained that inmates are not transported for child support or custody matters because those matters can be done through

---

[13] The Department's response contains some factual inaccuracies. First, it states father's section 388 petition was filed on September 27, 2016, when it was filed on September 6, 2018. Next, it states that father was sent notice of the April 24, 2015 hearing on April 10, 2015, when notice was mailed on April 21, 2015.

[14] Father points out that his signature appears in the location on the JV-451 form where a prison official was supposed to make a declaration about the facility's available technology.

16

teleconference, but that father should have had the opportunity to have a teleconference. When the social worker told the correctional counselor that according to the form, the Tallahatchie facility lacked compliant technology, the counselor stated that this might have been because father stated he wanted to be physically present. The corrections counselor also said father was returned to California to finish his sentencing as his anticipated release date was on November 5, 2016. The counselor cautioned that father's release date could change, as father had not been a model prisoner.

At the hearing on December 12, 2016, father's attorney began her argument by noting that father was a nonoffending presumed parent. Father received notice while incarcerated in Mississippi under the jurisdiction of CDCR. As a presumed father, he was entitled to notice and an opportunity to be heard. He wrote back and asked to appear, but was not permitted to appear, even though he had not signed a waiver. He was also not appointed counsel to represent his interests and the case proceeded in his absence. Father had completed some life skills programs, as well as a program called InsideOut, and he had been released from prison. Father was asking for an opportunity to get to know his children better, and had been fully compliant, testing negative for all drugs and alcohol since his release. Me.J. was interested in getting to know father, and so father's attorney asked for six months of reunification services and a visitation order.

The Department argued that notice was proper, and that father had not seen his children for almost six years. Transportation was not available, based on the interview with the corrections counselor, and it was father's own conduct that landed him in prison.

The court found father had received proper notice of the hearing, nonetheless acknowledging the challenges posed by the fact that father was incarcerated in Mississippi. Turning to the best interests prong, the court found that father had not shown that the requested relief would be in the children's best interests, because he had been away from them for five to six years, only one visit had taken place, and based on statements from the corrections counselor, father's inability to be present at the hearing may have stemmed from father's own behavior. The court denied father's section 388 petition, but emphasized that father's monitored visits could continue and "[t]his does not mean that he has no opportunity to reunify with the children, because the Department will need to revisit its . . . recommendation, whether or not it will be adoption or whether or not it will be legal guardianship."

## 11. *Slow track towards permanency – November 2016 to April 2019*

In response to multiple requests by the Department for continuances, the section 366.26 hearing was continued

numerous times, from December 12, 2016, to April 30, 2019.[15]

Father's weekly monitored visits generally went well during this time, although at least once, the social worker had to speak with him after maternal grandmother complained about father being on his phone and wandering into the children's bedrooms during a visit. Father's behavior improved after he spoke with the social worker.

In April 2018, the Department reported that father had maintained weekly visits, which were going well. However, sometimes the children did not cooperate with visits, and Me.J. was more interested in getting to know father than Al.J. or An.J.. Father was making an effort to have a relationship with the children, participating in birthday and holiday celebrations, and buying gifts like school supplies, clothes, shoes, socks, and toys.

In October 2018, the Department reported that Al.J., who previously was having serious behavioral problems, was improving. Father got the children a pet dog, and Al.J. had demonstrated a positive change in behavior, spending time outdoors playing with the dog and sharing chores with his

---

[15] The reasons for these continuances varied. Initially, the Department needed additional time for maternal grandmother to complete the necessary paperwork and interviews for the adoption home study. Later, Alex was having behavioral problems, and the Department wanted to make sure that maternal grandmother was equipped to handle his needs.

siblings, such as feeding, bathing and picking up after the dog. The same report noted that father was arrested in August 2018 for possession of methamphetamine for sale, but was released ten days later. The police report states that when police responded to a possible car crash, father was trying to jumpstart his vehicle. He told police he was on parole, consented to a search of his person, and stated he had a glass methamphetamine pipe in his front pocket and a bag of methamphetamine in a backpack in the car. Father told police he was trying to do better to gain custody of his child, but did not have any income and was looking for help. A friend gave him the methamphetamine to make some extra money, but father did not know how to go about selling it.

Father was arrested again on February 1, 2019, for sale or transportation of methamphetamine. He was released on bail the following day, with a court date of March 6, 2019.

Father was not in court on April 30, 2019, the date scheduled for a section 366.26 hearing. His attorney asked for a continuance, acknowledging he had not heard from father. The court denied the request for a continuance. After hearing argument on application of the beneficial relationship exception, the court found the children to be adoptable and that no exception applied. It terminated parental rights as to all four children.

## DISCUSSION

### *Notice violation and right to counsel*

Both parties agree that father was not properly notified of the May 4, 2015 jurisdiction and disposition hearing. Father does not challenge the validity of juvenile court's jurisdictional findings, which were based on mother's drug abuse. He does, however, argue that improper notice of the hearing led to a series of prejudicial errors, including the court's failure to appoint counsel to represent him. The Department argues that any notice error was harmless beyond a reasonable doubt.

### A.    Standard of review

The Department argues that the notice errors were harmless, citing two court of appeal cases that review the prejudicial effect of defective notices under the "harmless beyond a reasonable doubt" standard. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; *In re Justice P.* (2004) 123 Cal.App.4th 181, 193 [due process violations in dependency proceedings have been held to the harmless beyond a reasonable doubt standard of prejudice].)

At least two California Supreme Court cases have applied the *Watson* standard—which requires the appellant to show a reasonable probability of a more favorable outcome—even to constitutional errors in dependency cases.

(*In re Jesusa V.* (2004) 32 Cal.4th 588, 625 [applying harmless error test and concluding father was not prejudiced by appearing at a dependency hearing only through his attorney].) "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) We have interpreted that language as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We believe it appropriate to apply the same test in dependency matters." (*In re Celine R.* (2003) 31 Cal.4th 45, 59–60; see also *In re M.M.* (2015) 236 Cal.App.4th 955, 963.) The *Watson* harmless error test also applies to an appellate court's review of the denial of a parent's statutory right to counsel. (*In re J.P.* (2017) 15 Cal.App.5th 789, 797; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667–1668.)

Regardless of which standard is applicable, we conclude that there was prejudicial error. Under the *Watson* standard, it is reasonably probable that absent the notice error and the related denial of legal representation, father would have been granted reunification services, and his parental rights would not have been terminated. The Department has also not shown that the notice error was harmless beyond a reasonable doubt.[16]

---

[16] Given our finding that the error here was not harmless, we need not reach whether the court's failure to appoint counsel might be structural error. We simply note

Before delving into the specifics of father's case, we briefly review the law governing a parent's right to notice of the proceedings and right to counsel, focusing on the law applicable to incarcerated and indigent parents.

---

the following language from a 2008 California Supreme Court opinion: "In *United States v. Gonzalez–Lopez* (2006) 548 U.S. 140, the United States Supreme Court held that erroneous deprivation of a criminal defendant's Sixth Amendment right to counsel of choice was a structural defect requiring reversal of the conviction without inquiry into prejudice. The court explained: 'It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.' (*Id.* at p. 150.) [¶] We conclude that error in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding is trial error that is amenable to harmless error analysis rather than a structural defect requiring reversal of the juvenile court's orders without regard to prejudice. Determining prejudice in this context does not necessarily require 'a speculative inquiry into what might have occurred in an alternate universe.' (*United States v. Gonzalez–Lopez, supra,* 548 U.S. at p. 150.)" (*In re James F.* (2008) 42 Cal.4th 901, 914–915.)

## B.   Right to notice and right to appear

"Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object.  [Citation.]  The child welfare agency must act with diligence to locate a missing parent.  [Citation.]  Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith."  (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 188.)  When a parent is not present at the detention hearing, the notice of the jurisdiction and disposition hearing must be delivered by personal service or by certified mail, return receipt requested.  (§ 291, subd. (e)(1); *In re J.H.*, *supra*, 158 Cal.App.4th at p. 181, fn. 4.)

When a parent is incarcerated, no petition under specified subdivisions of section 300 "may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding."  (Pen. Code, § 2625, subd. (d).)[17]

---

[17] For purposes of Penal Code section 2625 only, "the term 'prisoner' includes any individual in custody in a state

24

Penal Code section 2625, subdivision (b), requires the juvenile court to order notice transmitted to an incarcerated parent for proceedings under section 300 and 366.26. These provisions "encompass the jurisdictional hearing, which may precede the formal adjudication of the petition at the dispositional hearing, as well as the dispositional hearing." (*In re Jesusa V.*, *supra*, 32 Cal.4th at pp. 599–600, fn. 2.) The notice of hearing must inform the prisoner of his or her options for requesting to appear and participate personally or telephonically. (Cal. Rules of Court, rule 5.530(f)(1)(B).) The notice must be served on the parent, his or her attorney, the person in charge of the institution, and the sheriff's department of the county in which the order is issued not less than 15 days before the date of the hearing, and it must include as attachments Judicial Council Form No. JV-450 [Order for Prisoner's Appearance at Hearing Affecting Parental Rights] and Judicial Council Form No. JV-451 [Prisoner's Statement Regarding Appearance at Hearing Affecting Parental Rights]. (Cal. Rules of Court, rule 5.530(f)(5).)

The requirement that a prisoner must either be present or waive his or her own presence ensures that the prisoner actually received the notice required by Penal Code

---

prison, . . ." (Pen. Code, § 2625, subd. (a).) The definition of a state prison refers "to all facilities, camps, hospitals and institutions for the confinement, treatment, employment, training and discipline of persons in the legal custody of the Department of Corrections." (Pen. Code, § 6082.)

section 2625, subdivision (b).  (*In re Jesusa V.*, *supra*, 32 Cal.4th at pp. 623–624; see also *In re Marcos G.* (2010) 182 Cal.App.4th 369, 385–386 [involving a father who did not appear and had no attorney appearing for him].)  Although the presence of an attorney alone does not meet the requirements of Penal Code section 2625, subdivision (b), the fact that a parent was represented at the hearing affects the reviewing court's analysis of whether any error was harmless.  (*In re Jesusa V.*, *supra*, 32 Cal.4th at pp. 601–602, 622, 624–625 [prisoners do not have a constitutional right to be present at every type of hearing, and meaningful access to a court through appointed counsel where the prisoner is given an opportunity to present testimony in some form and cross-examine witnesses].)

## C.   Right to counsel

"[I]ndigent parents and guardians have statutory rights to appointed counsel at any hearing where out-of-home placement of the child is at issue.  (§ 317, subd. (b); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659.)"  (*In re Kayla W.* (2017) 16 Cal.App.5th 409, 416.)  This division recently reviewed the statutory basis for a parent's right to counsel in dependency proceedings in *In re J.P.*, *supra*, 15 Cal.App.5th 789.  "The juvenile court is statutorily required to appoint counsel for the parent of a child who is in an out-of-home placement (or as to whom the petitioning children and family services agency is recommending an out-of-home

placement) if the parent 'is presently financially unable to afford and cannot for that reason employ counsel . . . unless the court finds that the parent . . . has made a knowing and intelligent waiver of counsel as provided in this section.' (§ 317, subd. (b).) [¶] Once appointed, counsel 'shall represent the parent . . . at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent . . . unless relieved by the court upon the substitution of other counsel or for cause. . . .' (§ 317, subd. (d).)" (*In re J.P.*, *supra*, at p. 796.) "There is nothing vague or ambiguous about the legislative command—in the absence of a waiver, the juvenile court must appoint an attorney to represent an indigent parent at the detention hearing and at all subsequent proceedings, and the attorney *shall* continue to represent the parent unless relieved by the court upon the substitution of other counsel or for cause." (*In re Tanya H.* (1993) 17 Cal.App.4th 825, 829.)

So long as an indigent parent or guardian appears or communicates to the court a request for legal representation, counsel should be appointed. (*In re Ebony W.* (1996) 47 Cal.App.4th 1643, 1646–1648 [no duty to appoint counsel where mother never appeared or manifested any desire to participate in proceedings]; see also Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2019) § 2.61[1].)

27

## D.  Application/Analysis

As noted earlier, the Department concedes that its April 21, 2015 notice was inadequate to properly notify father of the scheduled May 4, 2015 jurisdiction and disposition hearing.  It is also undisputed that father promptly responded to the notice on April 27, 2015 by requesting to appear at the hearing.  We cannot determine from the record when either the court or the Department received father's request, but we do know that the court did not appoint an attorney to represent father, and no action was taken to facilitate father's request to appear.  More than a year later, in May 2016, the Department personally served father with a notice of the section 366.26 hearing in a California prison, and he again requested to be present.  Only in August 2016 at the section 366.26 hearing was counsel finally made available to represent father.

The Department's harmlessness argument ignores the fact that the defective notice caused father to lose not just his right to appear but his right to legal representation during critical stages of the dependency case.

### 1. *Loss of right to counsel*

The Department tries to separate the notice error from the question of whether father was entitled to legal representation.  It insists that the court's error was limited to its incorrect notice finding because the court was not

28

under a duty to appoint counsel without a request from father.  The Department relies on *In re Ebony W.*, *supra*, 47 Cal.App.4th 1643, where the court reasoned that if the language of section 317[18] was read to give meaning to the subdivisions governing both mandatory and discretionary appointment of counsel, "the plain meaning of those provisions require some manifestation by the indigent parent that he or she wants representation before the court is obliged to appoint counsel.  [¶]  Our conclusion that section 317 requires the indigent parent to communicate in some fashion his or her desire for representation before the juvenile court is obligated to appoint counsel is buttressed by the statutory provisions discussed above in connection with the detention, jurisdictional, and section 366.26 hearings." (*Id.* at p. 1647.)

---

[18] The relevant text of section 317, subdivision (a)(1), currently states:  "When it appears to the court that a parent or guardian of the child desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section."  The relevant text of subdivision (b) states: "When it appears to the court that a parent or guardian of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, . . . the court shall appoint counsel for the parent or guardian, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section."

In *Ebony*, the court found no manifestation of a desire for representation by a mother who did not appear at any hearing of the dependency case, despite the fact that the agency made reasonable efforts to locate her, mailed her notice of the jurisdictional hearing, and personally served her with notice of the section 366.26 hearing. (*In re Ebony W.*, *supra*, 47 Cal.App.4th at p. 1645.) Here, in contrast, father unambiguously requested to be present at the jurisdiction and disposition hearing, a request that can reasonably be interpreted as including a request for appointment of counsel. Nothing in the record shows the Department took any steps to inform the court of father's request to appear, or to respond to father's request in any way. The parties have not cited to, nor have we been able to find, any case where an incarcerated parent who wishes to appear and communicates that request is denied the right to counsel. (Cf. *Jesusa V.*, *supra*, 32 Cal.4th at pp. 625–626; *In re J.H.*, *supra*, 158 Cal.App.4th at pp. 179–180 [father was transported to appear in dependency case and an attorney was appointed at his first appearance, within one month of agency learning father's whereabouts, despite almost three years of diligent searches].)

Both the majority and concurring opinions in *In re J.P.* emphasize the "unique impact that a deprivation of the right to appointed counsel can have . . . on the fairness of the dependency proceedings." (*In re J.P.*, *supra*, 15 Cal.App.5th at p. 802 (conc. opn. of Baker, J.).) The facts of *In re J.P.* involved a mother who was initially represented by counsel

30

when the juvenile court sustained petition allegations and denied mother reunification services. Two years into the dependency case, the court relieved mother's counsel for unknown reasons. (*In re J.P.*, *supra*, at pp. 792–793.) After another two years passed, mother filed a petition under section 388 seeking reappointment of counsel, reunification services, and liberalized visits. The court scheduled the motion for a hearing but declined to appoint counsel, even though minor's attorney appropriately raised the question of mother's lack of legal representation both before and during the hearing. (*Id.* at pp. 793–795.) The juvenile court's refusal to appoint an attorney for mother constituted prejudicial error, in part because court-appointed counsel "could have kept the hearing focused on the matters at issue in a section 388 hearing" and would be better equipped than mother to communicate with the Department and arrange for testimony from relevant witnesses. (*Id.* at p. 801.) The Department's own evidence supported a finding that the requested relief was in the child's best interest, and so "'deprived [mother] of opportunities she should have had to challenge the court's orders and findings . . . and created fundamental unfairness that violated minimum due process requirements.' [Citation.]" (*Ibid.*)

Just as we conducted a prejudice analysis in *In re J.P.*, we next consider whether the denial of father's right to counsel created a fundamental unfairness in the proceedings that constituted prejudice. (*In re J.P.*, *supra*, 15 Cal.App.5th at pp. 797–801.) We examine what rights would have been

31

available to father if the court had appointed an attorney before proceeding with the jurisdiction and disposition hearing. Absent the notice error, and the resulting deprivation of court-appointed counsel, we conclude it is reasonably probable that father would have fared much better over the four-year span of this dependency case and his parental rights may well not have been terminated.

2. *Right to a continuance and either transportation or an opportunity to communicate with counsel.*

Father had a statutory right to appear at the disposition hearing, absent a written waiver. (Pen. Code, § 2625, subd. (d); *Jesusa V.*, *supra*, 32 Cal.4th at pp. 621–624 [prisoner-parent has a right to attend hearing].) We need not analyze the question of whether Penal Code section 2625, subdivision (d) requires transportation of a prisoner who is under the authority of the California Department of Corrections, but is housed out-of-state due to prison overcrowding. Instead, court-appointed counsel would at a minimum have requested a continuance to contact father and investigate whether father could appear in person or by telephone or videoconference. (See, e.g., *In re M.M.*, *supra*, 236 Cal.App.4th at pp. 960–965 [mother incarcerated in different county, and court's decision to conduct hearing in mother's absence over her counsel's objection was prejudicial error].) In *In re Iris R.* (2005) 131 Cal.App.4th 337, 339, the juvenile court had appointed counsel to represent parents.

Acknowledging the challenge of arranging transportation for parents, it asked the attorneys to contact parents and acquaint them with the contents of the Department's reports, suggesting that a hearing could be continued if anything came up in subsequent reports to allow counsel sufficient time to communicate with parents. (*Ibid.*) When mother argued the court violated her constitutional due process rights by conducting the hearing in her absence, the appellate court found harmless error, noting that mother had all the relevant reports and was in contact with her attorney, ensuring that any helpful information would have been relayed to the court. (*Id.* at pp. 342–343.)

Here, absent the notice error and resulting deprivation of counsel, father's attorney could have taken steps to either arrange for father's presence at the jurisdiction and disposition hearing, or preserved for appeal the question of whether father had a right to be present. Alternatively, similar to *In re Iris R.*, *supra*, 131 Cal.App.4th at page 339, an appointed attorney could have relayed the substance of the Department's reports and recommendations to father and had an opportunity to present evidence and argument on father's behalf. Neither of these alternatives occurred in this case, and father suffered significant prejudice as a result, because (as discussed in the next two sections) the court would likely have ordered reunification services and need not have entered a removal order against him.

### 3. *Right of an incarcerated parent to reunification services*

An incarcerated parent has the right to receive reunification services unless the court determines by clear and convincing evidence that such services would be detrimental to minor. (§ 361.5, subd. (e)(1).) We disagree with the Department's argument that there was "ample uncontested evidence" to support the court's decision to deny reunification services for father. This argument ignores the fact that because the Department provided inadequate notice resulting in a deprivation of counsel, father had no opportunity to contest the evidence the Department now calls "uncontested" or to develop additional evidence on some or all of the many factors section 361.5, subdivision (e)(1) requires a juvenile court to consider.

At disposition, the only evidence before the court concerning father was that in 2012 he began serving a six-year sentence for assault, and that the children reported having no contact and very little recollection of him. The Department's April 24, 2015 jurisdiction and disposition report misleadingly stated that father "remains in prison in Mississippi." It failed to mention that the Department learned of father's whereabouts through an inmate locator search on the CDCR website, a printout of which may have been attached to a March 13, 2015 addendum report, although the record is not clear. The jurisdiction and disposition report does acknowledge that "details as to his incarceration are currently unknown but are continuing to

be investigated." When the disposition hearing took place, the children were still quite young, between the ages of three and seven. Appointed counsel would be able to argue that the children's ages provided a valid explanation for their lack of recollection, as the youngest was just an infant and the oldest was only five years old when father was sent to prison. The attorney could also have investigated the details of father's out-of-state incarceration, advocated to have him returned to California and to be provided reunification services designed to establish and strengthen what concededly may have been a tenuous connection between him and his children. The role of an attorney in ensuring a parent receives adequate reunification services cannot be understated. (See, e.g., *In re G.L.* (2014) 222 Cal.App.4th 1153, 1163–1165 [describing complexity of exceptions to providing reunification services and affirming order granting incarcerated parent reunification services]; *A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1059 [if a parent was unable to receive services or maintain the same level of contact during a period of incarceration, the court could still order the child returned to the parent absent evidence of a substantial risk of detriment]; *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010–1014 (*Mark N.*) [absent a finding of detriment, agency must work with prison to provide reasonable reunification services tailored to parent's specific circumstances].) In *Mark N.*, we emphasized that as long as the juvenile court has not found that reunification services would be detrimental, an incarcerated parent is

entitled to reasonable reunification services. (*Mark N.*, *supra*, 60 Cal.App.4th at pp. 1013–1015 [agency cannot use parent's incarceration to excuse failure to provide reasonable reunification services].)

The Department argues that we should affirm the order denying reunification services to father because it was supported by substantial evidence. However, we are not reviewing the order for sufficiency of the evidence supporting it. We are examining whether father's absence and his lack of counsel at the disposition hearing was prejudicial. We conclude that it was, because the paucity of any evidence to show reunification services would cause detriment stands in stark contrast to the case law holding that an incarcerated parent is entitled to reasonable reunification services. The Department has not pointed to case law supporting its position that the length of father's prison sentence alone constitutes clear and convincing evidence of detriment.

Ultimately, father was returned to California less than a year after the disposition hearing. By July 2016, father had completed a parenting program for prisoner parents and began communicating with his children on his own. Particularly in light of father's status as a non-offending parent, we are not convinced that, absent the error that led to father's non-appearance and the denial of counsel, the court would have denied reunification services to father. On these facts, it is arguably more likely than not that father would have been given reunification services and successfully completed such services.

4. *No need for order removing children from father, because he was non-custodial*

Finally, appointed counsel would likely have argued that the court did not need to, nor did it have a basis to, enter a removal order against father, who was a non-custodial parent. (*In re Andrew S.* (2016) 2 Cal.App.5th 536, 542–544.) In the section of its respondent's brief addressing the court's unfitness findings, the Department points to the court's removal order under section 361, subdivision (c), and argues that even if father is permitted to argue that the removal order was in error, prior case law shows that such an error is harmless where the record supported a substantial danger finding under section 362, subdivision (a). (See *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 353.) At this juncture, it is not necessary, and indeed speculative, to examine whether the record would have supported such a "substantial danger" finding against father. Instead, we simply note that this is another example of why father would have benefited from legal representation at the disposition hearing.

5. *Conclusion*

We cannot agree with the Department's argument that the failure to give father adequate notice of the jurisdiction and disposition hearing was harmless error. Father promptly responded to the initial notice, clearly indicating

37

his desire to appear at the hearing. But for the error of untimely notice, the reasonable consequence of father's request would have at a minimum involved appointment of counsel to represent father at the jurisdiction and disposition hearing. As thoroughly explained above, legal representation would have resulted in a tangible benefit to father, altering the course of the dependency case to such a significant degree that we must say it was within the realm of reasonable probability that father, having availed himself of reasonable reunification services and having returned to California and established a relationship with his children, would not have been in his current position of having his parental rights terminated.

Instead, subsequent events only compounded the initial notice error. First, the Department asked the court to bypass father's reunification services. Second, the court failed to provide notice of some of its critical orders to father. Third, the court summarily denied father's first petition seeking reunification services once he had returned to California. Fourth, the Department failed to notify the court of father's April 27, 2015 letter until it had to respond to the section 388 petition filed by father's counsel after father appeared at the first section 366.26 hearing.

In contrast to the Department and the court's dismal record of protecting father's rights, father himself took steps to not only improve his chances of reunification, but to seek additional assistance from the court. Even without help from an attorney or guidance from a social worker, father

38

independently took classes while in prison to improve the chances that he could successfully parent his four children.

Considering all of the above, we conclude that not only has the Department failed to show that the notice error was harmless beyond a reasonable doubt (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 193), but also that father has demonstrated miscarriage of justice warranting reversal. (Cal. Const., art. VI, § 13.; *In re J.P.*, *supra*, 15 Cal.App.5th at p. 797.)

Given the passage of time and circumstances that have changed since the juvenile court's disposition order and refusal to provide reunification services to father, as well as the subsequent termination of his parental rights, this court is not in a position to make orders in the first instance. Instead, we reverse the dispositional orders as to father made May 4, 2015, and vacate the April 30, 2019 order terminating parental rights. (See *In re A.L.* (2010) 190 Cal.App.4th 75, 79–80 [reversal for error in denying one parent's section 388 petition, "a necessary antecedent to the holding of the section 366.26 hearing in which the juvenile court would decide permanent plans for the minors," vacates termination of parental rights in later section 366.26 hearing as to both parents].) We remand the matter to the juvenile court to reappoint counsel for father if necessary, and to promptly hold a new dispositional hearing as to father only. At the new dispositional hearing, the parties can appropriately address the facts as they existed at the time of the May 4, 2015 hearing, as well as any subsequent

developments up to the time of the new hearing that bear on father's right to reunification services and the minors' best interests. (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 597 [on remand, juvenile court may consider matters that transpired while the appeal was pending].)

### *Father's other arguments*

Because we have concluded that father has shown a miscarriage of justice through the denial of his right to appear and his right to counsel, we do not need to reach father's remaining arguments about the denial of his section 388 petition or the absence of any finding that father was "unfit."

## DISPOSITION

The juvenile court's dispositional orders as to father only, entered on May 4, 2015, are reversed, including the denial and termination of reunification services for father only. In addition, the juvenile court's April 30, 2019 order terminating parental rights is vacated. The matter is remanded with instructions to appoint counsel for father and to conduct a new dispositional hearing under sections 358 and 360, taking into account any evidence developed after the May 4, 2015 hearing that may bear upon the issues to be decided at the new dispositional hearing. We express no opinion on whether father is entitled to reunification services, leaving it to the juvenile court to base its decisions on the evidence before it. If the court determines that father is not entitled to reunification services or other relief, it shall schedule and hold a new section 366.26 hearing.

MOOR, J.

We concur:

RUBIN, P. J.                    KIM, J.

Filed 1/23/20

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re A.J. et al, Persons Coming Under the Juvenile Court Law. | B297762<br><br>(Los Angeles County Super. Ct. No. DK09916A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>M.J.,<br><br>    Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on December 24, 2019, was not certified for publication in the Official Reports.  Upon appellant's request, and for good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

---

RUBIN, P. J.        MOOR, J.        KIM, J.