Filed 7/21/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re T.S. et al., Persons Coming Under the Juvenile Court Law. | B293453<br><br>(Los Angeles County Super. Ct. No. DK24133AB) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>VACHESLAV S.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge. Reversed and remanded.

Law Offices of Honey Kessler Amado, Honey Kessler Amado and Nancy Rabin Brucker for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Vacheslav S., father of now-10-year-old T.S. and six-year-old Christian S., appeals the juvenile court's orders terminating jurisdiction over T.S. and Christian pursuant to Welfare and Institutions Code section 364,[1] granting sole legal and physical custody to the children's mother, Nataliya S., and granting visitation to Vacheslav. On appeal Vacheslav contends the court erred in denying his request for a contested evidentiary hearing on custody and visitation. Vacheslav also argues the court's custody and visitation orders were not in the best interests of the children and constituted an abuse of discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Detention of T.S. and Christian*

On July 16, 2017 police searched the family's home in connection with the arrest of T.S. and Christian's stepfather, Albert N.[2] During the search police found a loaded handgun on a shelf in the garage and eight ounces of cocaine in a purse in Nataliya and Albert's closet. The police referred the family to the Los Angeles County Department of Children and Family Services (Department) for investigation.

---

[1] Statutory references are to this code.

[2] Albert was arrested during execution of a search warrant at an apartment used by a drug cartel. The police investigation found Albert was a major figure in the cartel and trafficked approximately 500 kilograms of cocaine per month.

A Department social worker interviewed Nataliya on July 18, 2017.  Nataliya claimed the cocaine did not belong to her and speculated it may have belonged to her sister, who had recently visited for Nataliya and Albert's wedding.  Nataliya said she did not use illegal drugs and was willing to submit to drug testing.  As for the handgun found by the police, Nataliya said it belonged to Albert's brother, who had also been in town for the wedding.

Nataliya informed the social worker she and T.S. had emigrated to the United States from Russia in 2013, while she was pregnant with Christian.  She had never been married to Vacheslav, who still resided in Russia.  Nataliya met Albert shortly after arriving in the United States, and they had been married for one month.  During an interview with the social worker T.S. referred to Albert as "dad."

On August 1, 2017 the Department filed a petition to declare T.S. and Christian dependent children of the juvenile court under section 300, subdivision (b)(1).  The petition alleged Nataliya placed the children in a dangerous home environment by allowing a loaded handgun and narcotics to be within reach.

At the detention hearing on August 1, 2017 the court ordered the children detained from Nataliya.  Vacheslav did not appear at the hearing because he had not yet been located by the Department.  Family reunification services and monitored visitation were ordered for Nataliya.

2.  *The Jurisdiction/Disposition Report*

After the detention hearing the children were placed with their maternal grandmother.  Nataliya had monitored visits with the children on a regular basis.  She continued to insist the

3

cocaine found in the house did not belong to her, and she denied any knowledge of Albert's drug-trafficking activity.

In interviews with the social worker Vacheslav said he had last seen the children when they visited Russia in 2014. He had some telephone contact with the children after that but had not spoken to them in about a year. He said he had tried to see them when he visited Los Angeles in 2014, but Nataliya would not allow it. Vacheslav planned to attend the jurisdiction/disposition hearing and intended to seek custody of the children and take them to Russia.

On September 19, 2017 Vacheslav had a monitored visit with the children in the Department's offices. The social worker noted, "[T]he children did not call him 'dad,' hug him or show any sign of affection or attachment." Vacheslav asked the children questions and tried to engage them. The social worker privately asked T.S. if he knew Vacheslav, to which T.S. replied, "[H]e is that motorcycle guy from the video. . . . Daddy Slava?"

3. *The Jurisdiction/Disposition Hearing*

The jurisdiction/disposition hearing was held on October 12, 2017. Both parents appeared. Nataliya's counsel submitted evidence Nataliya had been complying with her case plan and had petitioned for dissolution of her marriage to Albert. Neither parent contested a finding of jurisdiction.

The juvenile court sustained the petition and continued the disposition hearing pending resolution of jurisdictional issues. Both parents were permitted to have unmonitored visits in a public setting.

In a report dated November 21, 2017 the Department stated the children's visits with Nataliya were going well and Nataliya's drug tests had been negative. However, the

Department expressed concern Nataliya had "poor judgment in regards to the children's well-being and safety in the past." The Department recommended the children continue to be placed with their maternal grandmother and services continue to be provided to the family.

On December 1, 2017 Nataliya submitted a declaration in which she stated Vacheslav had urged her to move to the United States in 2013 to assist with his business. He initially provided her with financial support but ceased shortly after she moved, leaving her with no income or means to support their children. Christian was born in Los Angeles in August 2003, five months after Nataliya arrived in California. Vacheslav did not meet Christian until eight months later in 2014, when Nataliya took the children to Russia for vacation. Vacheslav's visit with the boys lasted only one hour, and Vacheslav did not hold or hug Christian. Prior to this dependency case Vacheslav had met Christian only three times.

Nataliya's declaration also recounted that, in 2015, Nataliya sued Vacheslav in Russia for child support. Vacheslav initially contested paternity, but, after genetic testing was done, the Russian court found he was the father of T.S. and Christian. The Russian court ordered him to pay child support, although Nataliya alleged the support was paid to Vacheslav's mother and never given to her. Vacheslav did not seek custody or visitation in the Russian proceeding.

In a report dated February 8, 2018 the Department stated the children were doing well in their maternal grandmother's home. Nataliya had three unmonitored visits per week in a public setting and one unmonitored overnight visit per week. Nataliya was caring and affectionate with the children, and they

had a strong bond and attachment to her.  Nataliya was entitled to visit the children more often, but she told the social worker she was very busy starting a new business.

The Department continued to express concern over returning the children to Nataliya.  Nataliya had recently requested a male friend be allowed to monitor her visits and potentially move into the grandmother's home to assist with the children; however, the friend had an extensive criminal record. The Department asserted this was evidence of Nataliya's "pattern of associating with men who have serious criminal histories" and her failure to address the issues that had initially brought the children within the Department's jurisdiction.

The Department reported Vacheslav had two visits with the children in December 2017 while he was in Los Angeles.  He spoke to them by telephone only once since then.  The Department concluded, "[P]lacing the children with their father in Russia would be detrimental to their well-being and emotional stability as father has not had regular contact with the children for many years and has not maintained a relationship with them since the inception of this case."

The continued disposition hearing was held on February 22, 2018.  Vacheslav testified he wanted custody of the children although he admitted he had never lived with either T.S. or Christian.  He said he had visited the children each time he was in Los Angeles since the beginning of this proceeding and explained he had not had contact with the boys since January 2018 because their grandmother would not respond to his telephone calls.  Vacheslav's counsel requested the boys be released to their father.  Nataliya's counsel and the children's counsel requested the boys be released to their mother.

The court declared T.S. and Christian dependents of the court and released them to Nataliya. The court ordered family maintenance services be provided to Nataliya and enhancement services be provided to Vacheslav. Vacheslav was permitted unmonitored visits at least once per week in California or via telephone/video conference.

4. *The Six-month Review Hearing*

In a report dated July 2, 2018 the Department stated the children were comfortable and well-cared-for in Nataliya's home. The children had been participating and progressing in their court-ordered services. Vacheslav had unmonitored visits over video conference with the children at least once per week. T.S. stated he enjoyed visits with his father but wanted to continue living with his mother and brother. Vacheslav continued to express his desire to have the children live with him in Russia. He also sought to have more frequent video conferences with them.

The Department recommended the court order continued family maintenance services. While Nataliya had made progress in her court-ordered therapy and counseling, she had not provided proof of completion or participation for all services that had been ordered. The Department also expressed concern over Nataliya's ability to provide for the children by means of a legal income; she was renting a three-bedroom house and employed a housekeeper five days a week, but she had failed to provide any proof of income. In addition, the Department opined Nataliya "has showed no personal awareness as to how she failed to protect the children causing the initial detention." Nataliya had also "shown poor judgment in the last few months [as] evidenced by the fact that the children have not received well-child check-

7

up[s], their immunizations are not current, their dental examinations have not occurred and [T.S.'s Individualized Education Program] only recently was approved by mother."

In a subsequent report dated July 13, 2018 the Department stated Nataliya had provided proof the children attended well-child check-ups and Christian had received immunizations. The social worker also reported that Nataliya had refused to allow Vacheslav to visit the boys while he was in Los Angeles prior to the review hearing.

Vacheslav submitted a declaration in advance of the six-month review hearing in which he again requested custody of the children in Russia. In the alternative, he requested permission to take the children to Russia for 30 days during their summer vacation from school or to be allowed a weekend overnight visit while he was in Los Angeles for the hearing. Vacheslav alleged Nataliya was involved in criminal activity, citing the fact she lived in an expensive rental property and drove a new sports car but had no apparent significant income. He also stated Nataliya frequently interrupted his video conference visits with the children and made derogatory remarks about him in their presence.

The six-month review hearing was held on July 13, 2018. The juvenile court found by a preponderance of the evidence that Nataliya was not in compliance with her case plan and continued jurisdiction was necessary. The court ordered continuation of services for both parents and ordered visitation for Vacheslav every other week for one week at a time when he is in Los Angeles in addition to unmonitored video conferences.

### 5. *The 12-month Review Hearing*

In October 2018 the Department reported Nataliya had made significant progress in therapy and counseling. The service providers did not express any ongoing concerns regarding the children remaining in Nataliya's care. The children participated in unmonitored video conferences with Vacheslav at least once per week. Vacheslav also had two unmonitored weekend visits with the children since the last hearing. No issues had been reported regarding these visits. Prior to one visit the Department social worker observed Vacheslav acting appropriately with the boys, who were excited about their weekend visit.

The Department recommended the court terminate jurisdiction, grant sole physical custody to Nataliya and grant joint legal custody to Nataliya and Vacheslav. The Department further recommended the court order unmonitored weekend visits (or longer during school breaks) to Vacheslav when he was in California.

The 12-month review hearing was held on October 9, 2018. At the outset of the hearing Vacheslav's counsel requested the matter be set for contest, stating he sought to call witnesses in support of Vacheslav's request for custody. The court inquired whether Vacheslav had filed a section 388 petition requesting removal of the children from Nataliya. Vacheslav's counsel replied he had not. The court stated, "So [Vacheslav's] asking for—to go from home of mother to home of father, with him having sole physical and her having joint legal?" "So in effect, he is asking for detention from the mother." "[R]emoving custody from a parent requires a 388 and requires findings . . . of substantial risk of detriment and no services available to prevent

9

removal when I'm going solely from one to another instead of from one to joint."

The juvenile court then asked Vacheslav's counsel for an offer of proof regarding the evidence he wished to present. Vacheslav's counsel responded he would present testimony from a private investigator that Nataliya resided with a convicted felon and associated with drug dealers. The investigator would also testify there had been activity outside Nataliya's residence consistent with drug use, including people smoking in cars and "various individuals going in the house unloading things." Vacheslav's counsel also stated he would seek to have Nataliya testify regarding these observations. The court observed, "So all of [Vacheslav's attorney's] witnesses are about why the mother shouldn't have custody, as opposed to why his client should have custody."

The court denied the request to set the matter for contest, finding the evidence proffered was not relevant to the issues before the court. Proceeding to argument, Vacheslav's counsel requested week-long visitation with advance notice when Vacheslav was going to be in Los Angeles, during which time Vacheslav would ensure the children continued to attend school. He also requested video calls multiple times per week, plus visits in Russia when school was out of session.

The court found Nataliya had complied with her case plan and the children were no longer at risk. The court terminated jurisdiction over T.S. and Christian and granted sole physical and legal custody to Nataliya. Vacheslav was awarded unmonitored visits in California two weekends each month, plus video calls at least once per week.

**DISCUSSION**

1. *Governing Law*

Section 364, subdivision (a), requires the juvenile court to schedule a review hearing at least every six months for a dependent child who has not been removed from the physical custody of his or her parent or guardian. Section 364 applies also in cases where a child had been removed from the physical custody of a parent but later returned. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 614.) At the section 364 review hearing dependency jurisdiction must be terminated unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c); see *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290-291 [section 364, subdivision (c), establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision"].) "The juvenile court makes this determination based on the totality of the evidence before it." (*In re Armando L.*, at p. 615.)

When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an "exit order") that will become part of

11

the relevant family law file and remain in effect in the family law action "until modified or terminated by a subsequent order."[3] When making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; accord, *In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

### 2. *Vacheslav Was Entitled to an Evidentiary Hearing Before the Juvenile Court Terminated Jurisdiction and Issued Exit Orders*

Although the juvenile court ultimately considered Vacheslav's offer of proof, it initially indicated Vacheslav was not entitled to present evidence in support of his request for sole physical custody of the children as part of its exit order because he had not filed a petition pursuant to section 388.[4] That was incorrect.

Section 388 "is a general provision to be used by any interested party when circumstances merit an examination of the orders affecting a dependent child other than the periodic reviews prescribed by statute." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) The section 364 hearing was such a periodic review; and the court was required to consider at that hearing the totality of the

---

[3] If no family law action is pending, the court's order "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subd. (c).)

[4] Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

circumstances and the children's best interest in determining whether jurisdiction should be terminated and in fashioning appropriate exit orders.  Evidence regarding custody and visitation was necessarily relevant to the proceeding; and the court was empowered to modify prior orders, even absent a section 388 petition.  (*In re Roger S.,* at p. 30 [During the section 364 hearing "the trial court had the parties before it for the specific purpose of assessing progress and determining whether judicial intervention could be withdrawn. . . .  It erred, however, in . . . finding it was compelled to adopt the existing seven-month-old visitation order without change"]; accord, *In re Michael W.* (1997) 54 Cal.App.4th 190, 194-195 [section 388 petition not required for parent to present evidence at section 364 review hearing].)

On appeal the Department acknowledges the juvenile court's broad authority upon termination of its jurisdiction to fashion a custody and visitation order in the children's best interests without the need for a section 388 petition.  Mirroring the analysis used by the juvenile court, however, the Department argues that discretion does not extend to entering a custody order that removes a child from the physical custody of the parent with whom he or she is residing at the time of the hearing.[5]  To

_____

[5]     Explaining its position at oral argument, the Department stated the court could have considered a request for joint physical custody without the need for a section 388 petition, even though that would have been a change from the then-current custody order, because an order for joint custody would not involve removal of the children from the physical custody of Nataliya.  But, in the words of the juvenile court, "going solely from one to another instead of from one to joint" did require the filing of a section 388 petition.  In addition to the lack of statutory authority

13

support its position, the Department relies upon section 387, which requires the Department to file a supplemental petition to modify a previous order by removing a child from the physical custody of a parent and directing placement in a foster home. Section 387 concerns placement outside a parent's home during the pendency of the dependency case. Neither directly nor by analogy does it limit the court's authority to enter a custody and visitation order at termination based on the children's best interests. (See Cal. Rules of Court, rule 5.700 ["when the juvenile court terminates its jurisdiction over a dependent or ward of the court and places the child in the home of a parent, it may issue an order determining the rights to custody and visitation with the child"].)

The Department also argues, even if a separate section 388 petition was not required to present to the court Vacheslav's request for a custody and visitation order awarding him sole physical custody of T.S. and Christian, the juvenile court properly concluded it could not order a change of custody absent a finding of substantial risk of harm to the children and a lack of available services to prevent their removal from Nataliya's custody. This was also error. To be sure, at the disposition stage of a dependency proceeding, a court may not remove a child from a parent's custody and place the child in the custody of the Department unless the court finds there is a substantial danger

---

for this argument, the Department fails to suggest any benefit the children, the parents, the Department or the juvenile court would derive from requiring an additional filing when the parties are, in any event, before the court for the section 364 review hearing at which the terms of a juvenile court custody order are properly considered.

14

to the child and no available services to protect the child absent removal. (See § 361, subd. (c) ["A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody"].) There is no statutory language, however, suggesting this standard be applied when the court issues a custody order upon the termination of jurisdiction pursuant to section 364. To the contrary, as discussed, at that stage of the proceedings, the court must consider the child's best interest.

### 3. *The Juvenile Court Properly Requested an Offer of Proof*

Vacheslav argues he had a right to a contested hearing and the juvenile court erred by conditioning an evidentiary hearing on an offer of proof.[6] Generally, a parent has due process rights in dependency proceedings. (See *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777 ["[p]arents have a fundamental liberty interest in the care, custody, and management of their children"].) However, "due process 'is a flexible concept which depends upon the circumstances and a balancing of various

---

[6] In his appellate briefs Vacheslav argued he had a constitutional right to an evidentiary hearing without first making an offer of proof. At oral argument he modified his position and argued an offer of proof could not be required unless the parent had the burden of proof on the issue before the court.

15

factors.' [Citations.] Even where due process rights are triggered, it must always be determined 'what process is due.' [Citation.] We look to 'the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decisionmaking as affected by the burden caused by an additional procedural requirement.' [Citation.] Accordingly, our courts have recognized that '[d]ifferent levels of due process protection apply at different stages of dependency proceedings.'" (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1436.)

Utilizing these principles, some courts have held requiring an offer of proof prior to allowing an evidentiary hearing was a violation of due process if the hearing may result in the termination of reunification services. (See *In re James Q.* (2000) 81 Cal.App.4th 255, 268 [requesting offer of proof at section 366.21 review hearing violated due process because "[r]eview hearings are critical proceedings" at which "a parent may be denied further reunification services"]; *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 753 [offer of proof impermissible at section 366.22 hearing because it is "a critical juncture in a dependency proceeding—ordinarily the final opportunity of a parent to obtain the return of a minor to parental custody"].) Other courts have found an offer of proof may be requested when a parent faces termination of parental rights, but only when the parent has the burden of proof with respect to the disputed issue. (See *M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1180 [offer of proof permissible at section 366.26 hearing because parent had burden to show

16

applicability of an exception to termination of parental rights]; *In re Thomas R.* (2006) 145 Cal.App.4th 726, 732 ["[p]recluding the parents from exploring and testing the sufficiency of the Department's evidence is fundamentally different than requiring them to describe evidence they will offer to prove a point"].)

Still other cases have held requiring an offer of proof is acceptable, regardless of the burden of proof, when a parent is not facing termination of parental rights. For example, in *In re A.B., supra,* 230 Cal.App.4th 1420 the child had been removed from his mother's custody and placed with his father subject to the court's jurisdiction. (See § 361.2, subd. (b)(2).) Prior to the review hearing at which the court could terminate jurisdiction and award custody to the father, the mother sought to present evidence disputing conclusions in the Department's reports. After hearing an offer of proof, the juvenile court refused to hold a contested hearing and terminated its jurisdiction over the child, awarding sole physical and legal custody to the father with supervised visitation to the mother. On appeal the mother contended the juvenile court had violated her due process rights by requesting an offer of proof. (*In re A.B.*, at p. 1434.)

The court of appeal affirmed the orders. The court distinguished cases holding the request for an offer of proof was impermissible by noting that, in those cases, the parent was facing termination of parental rights, whereas in the case before it, the "fundamental issue in proceedings under section 361.2 is which parent has the best potential to provide a safe and secure permanent home for the minor. . . . Unlike in *James Q.,* the denial of reunification services to Mother under section 361.2 is not a fateful step down the path toward terminating parental rights. The parental interest at stake in a section 361.2

17

proceeding—which parent the minors will live with—is comparatively less consequential." (*In re A.B., supra,* 230 Cal.App.4th at p. 1437.)

The reasoning in *In re A.B.*, *supra*, 230 Cal.App.4th 1420 is applicable to the case at bar. The section 364 hearing considered whether court supervision would continue or, if terminated, with whom the children would live and the nature of visitation for the noncustodial parent. While significant, these determinations did not represent Vacheslav's final opportunity to avert termination of his parental rights. In this context it does not offend due process to condition the right to a contested evidentiary hearing on an offer of proof.

4. *Vacheslav's Offer of Proof Was Sufficient To Warrant an Evidentiary Hearing*

Vacheslav argues that, even if it was proper for the juvenile court to condition an evidentiary hearing on an offer of proof, his offer was sufficient to warrant a hearing. "A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact. The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1124.)

As discussed, responding to the court's request for an offer of proof to justify a contested hearing on custody and visitation issues, Vacheslav's counsel stated he would present the testimony of a private investigator who had observed arguably suspicious activity outside of Nataliya's residence. He stated the testimony would also show Nataliya resided with a convicted felon despite having been told the individual was not allowed to be around the children. This proposed evidence (as well as

Nataliya's explanation of these circumstances) was relevant to the court's consideration whether jurisdiction should be terminated or whether the family required further supervision to ensure there was no substantial risk to the boys' safety. It was also relevant to the court's determination of the custody and visitation arrangement that would be in the children's best interest. Further, the offer was sufficiently specific, setting forth the observations about which the private detective would testify. The court erred by denying Vacheslav the opportunity to present this testimony at a contested hearing.

The Department argues any error in denying a hearing was harmless because the proposed testimony was speculative and was contradicted by the social worker's and service providers' reports concerning Nataliya's home life. (See *In re Celine R.* (2003) 31 Cal.4th 45, 59-60 [harmless error doctrine applies in dependency cases; dependency court order should not be set aside unless it is reasonably probable the result would have been more favorable to the appealing party but for the error].) The Department's position, relying exclusively on the written record, "ignores the vital role that live testimony plays in a court's assessment of credibility and its evaluation of conflicting evidence: 'Oral testimony of witnesses given in the presence of the trier of fact is valued for its probative worth on the issue of credibility, because such testimony affords the trier of fact an opportunity to observe the demeanor of witnesses. [Citation.] A witness's demeanor is "'part of the evidence'" and is "of considerable legal consequence.'"" (*In re M.M.* (2015) 236 Cal.App.4th 955, 964.)

The juvenile court rejected the private investigator's testimony without hearing his account of events and the

19

circumstances under which his observations took place. The court also had no opportunity to assess Nataliya's response and her demeanor in attempting to explain the private investigator's observations. We, like the juvenile court, have only read the Department's account of Nataliya's living situation. If the investigator's testimony were believed and Nataliya could not provide a sufficient explanation, there is a reasonable probability the result of the proceedings would have been more favorable to Vacheslav—either because jurisdiction would have continued, giving him a further opportunity to make his case for custody, or because the court would have altered the custody and visitation arrangement in the exit orders. On this record we cannot conclude the court's error in refusing to hold a contested hearing was harmless.

## DISPOSITION

The orders terminating jurisdiction, giving sole legal and physical custody to Nataliya and granting visitation to Vacheslav are reversed. The matter is remanded to the juvenile court for a contested section 364 hearing at which all parties may present evidence concerning their present circumstances and the children's best interest, and for other proceedings not inconsistent with this opinion.

PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.

20