Filed 4/21/15; pub. order 5/12/15 (see end. of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B257860 |
| | (Los Angeles County Super. Ct. No. DK04990) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Reversed and remanded.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

A.W. appeals from the juvenile court's jurisdiction findings and disposition order adjudging her four-year-old son, M.M., a dependent of the juvenile court, removing him from A.W.'s care and custody and placing him with the Los Angeles County Department of Children and Family Services (Department) for suitable placement. A.W. contends the juvenile court erred in proceeding with the contested jurisdiction and disposition hearing in her absence and there was, in any event, insufficient evidence M.M. was at substantial risk of serious physical harm. The Department concedes A.W. had a right to be present at the jurisdiction and disposition hearing but argues "any alleged errors" were harmless. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition and the Detention Report and Hearing*

In a petition filed May 13, 2014 pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (g) (no provision for support),[1] the Department alleged A.W. had taken M.M. with her when she went to solicit sex and then, while incarcerated on charges of prostitution, failed to make an appropriate plan for his ongoing care and supervision.[2]

The detention report stated A.W. (then 27 years old) had been arrested for prostitution near the intersection of Lankershim Boulevard and Victory Boulevard in North Hollywood, a high traffic prostitution area, in the early evening of May 7, 2014. Undercover vice officers observed A.W., wearing a black hooded sweatshirt and purple leggings, walking on Lankershim Boulevard and turning her head from side to side monitoring the traffic. According to the officers, A.W. seemed to be paying special attention to cars with one man inside—actions consistent with that of a prostitute. One of the officers posed as a potential customer and made eye contact with A.W. He drove his

---

[1] Statutory references are to this code unless otherwise indicated.

[2] The child's presumed father, Larry M., was apparently incarcerated at the time of A.W.'s arrest and thereafter could not be located. He has not been a party to the dependency proceedings.

2

car to the parking lot of a fast food outlet a short distance away where he and A.W. continued to make eye contact. At this point, A.W. came up to the passenger window of the officer's unmarked car, looked inside and then walked away. A.W. then went over to a Lexus in the same parking lot and entered the car. The car drove away.

Officers followed the Lexus. A.W. got out on another street, and the Lexus proceeded to a different parking lot. The officers approached the vehicle and found M.M. in the back seat. He was wearing two shirts (one long sleeve) but no jacket or socks notwithstanding the inclement weather; M.M. had a bump on the side of his head. His diaper was subsequently described as soiled and soaking wet.

According to the police report, the driver of the Lexus, Keven L., confirmed to the officers that A.W. was working as a prostitute and described himself as her supervisor. Keven L. was arrested for human trafficking and child endangerment; A.W. was arrested for loitering for the purpose of prostitution. The detention report identified Keven L. as A.W.'s "boyfriend/pimp" and stated A.W. and M.M.'s father had "extensive criminal history with several felony and misdemeanor convictions." The attached information, however, reflected A.W. had been arrested on misdemeanor charges only with several misdemeanor convictions for prostitution.

Police officers made an immediate response (emergency) referral to the Department. A.W. called the child's maternal grandmother to arrange for M.M. to stay with her. However, M.M. was detained in shelter care in an emergency placement and not immediately released to his maternal grandmother because a search of the automated criminal history system (CLETS) indicated she had previously been arrested.

A.W. was in custody and did not appear at the detention hearing. The court found the Department had established a prima facie case for detaining M.M. and proving he was a person described by section 300, subdivisions (b) and (g). Temporary custody and placement was vested in the Department, which was authorized to release M.M. from shelter care to any appropriate relative. The Department was ordered to prepare a county jail removal order for A.W. so that she could appear at the next hearing.

3

2. *A.W.'s Arraignment*

A.W. was present, in custody, at the arraignment hearing on May 20, 2014; and counsel was appointed to represent her at that time. Following arraignment, the matter was continued for a contested jurisdiction and disposition hearing. The minute order states that A.W. was ordered back for the next hearing but does not reflect that the court directed the Department to prepare the necessary jail removal order.[3]

M.M. remained detained in shelter care. The court ordered the Department to evaluate the maternal grandmother for possible placement and reiterated that the Department had discretion to release M.M. to an appropriate relative. The maternal grandmother's home was approved as of May 29, 2014, and M.M. had been placed with her by the time of the jurisdiction/disposition hearing.

3. *The Jurisdiction/Disposition Report and Hearing*

The Department's report for the jurisdiction and disposition hearing on June 4, 2014 repeated the detailed description of the incident leading to A.W.'s arrest and M.M.'s detention, including Keven L.'s statements to police officers, and summarized an interview with A.W, who remained in custody.[4] According to A.W., she had gone to a strip club on Lankershim Boulevard and Victory Boulevard on the evening of May 7, 2014 to try out for a job. The manager of the club was not there, so she met her boyfriend Keven L. in the parking lot of the fast food restaurant next door. Keven L. was babysitting M.M. while A.W. had gone to the club. A.W. told the Department's social worker she and Keven L. had been in a relationship for approximately one year and he was helping her raise M.M. Although A.W. admitted she had a history of prostitution, she denied she was attempting to solicit sex on the evening she was arrested and denied

---

[3] Although the minute order for the May 20, 2014 arraignment hearing expressly stated that A.W. "appears in custody," the Department in its respondent's brief curiously asserts that it appears A.W. "was not incarcerated at the time of the arraignment."

[4] A.W. was interviewed on May 28, 2014 at the Century Regional Detention Facility, a Los Angeles County facility located in Lynwood.

4

Keven L. was her pimp. She insisted the vice officers must have lied when they reported that Keven L. had said she was a prostitute whom he supervised.

M.M.'s maternal grandmother reported the child was doing well in her care. The maternal grandmother expressed shock that A.W. had been involved in prostitution and said she had never had any concerns about A.W.'s parenting abilities or M.M.'s care while in A.W.'s custody. The Department's report noted that A.W. "has family support."

The jurisdiction/disposition report stated that A.W. and M.M. had been living in a motel in Encino. The attached health examination report indicated M.M. was small for his age but had no significant medical problems. He did have a "small faint bruise" on his right forehead. The Department recommended that M.M. be referred to an approved regional center provider for a mental health and/or developmental assessment.

The Department recommended the petition be sustained as written, M.M. declared a dependent of the juvenile court and removed from the custody of his parents, and A.W. receive family reunification services including a parenting program and individual counseling to address case issues with weekly monitored visitation.

At the outset of the jurisdiction/disposition hearing on June 4, 2014 counsel for A.W. stated, "The mother is not present. I've been led to believe she's incarcerated in San Bernardino." After the court tersely responded, "Noted," counsel continued, "I think we need to bring her in." The court replied, "They will not provide her county to county. They never do. An in-and-out [order] isn't going to be effective."[5] Counsel then

_____

[5] An addendum report filed by the Department on May 13, 2014, the same day as the dependency petition, attached a page containing Los Angeles County Sheriff's Department inmate booking information for A.W, which apparently had been located on the Internet. That sheet indicated A.W. was housed at the Century Regional Detention Facility in Lynwood but was subject to a hold from the San Bernardino County Sheriff's Department. However, nothing in any of the Department's reports reflects A.W. had actually been transferred to San Bernardino, and the juvenile court made no effort to determine whether she was still in the custody of the Los Angeles County Sheriff's Department.

objected to proceeding with the hearing without A.W. being present. The court overruled the objection.

The court received into evidence the detention report, the jurisdiction/disposition report, a due diligence report on the absent presumed father of M.M. and the documents approving the maternal grandmother's home as a placement for M.M. No other evidence was presented. Counsel for A.W. argued the description of A.W.'s conduct from the police report did not establish she had solicited an act of prostitution or engaged in any other form of criminal activity: "There is no evidence that Mother solicited anybody. There is no evidence that anyone solicited her. There is no evidence that money ever exchanged hands. There's no evidence that any indecent act took place." As for Keven L.'s purported admission that he was A.W.'s pimp, counsel urged it was hearsay upon hearsay and, beyond that, inherently incredible. Why, he asked, would Keven L. admit that to the police officers?

Counsel also emphasized that M.M. was not with A.W. when she was allegedly soliciting for prostitution. He was with A.W.'s boyfriend in the car; and, counsel urged, there was no evidence he was in any danger at any time during the incident. Finally, A.W. had a plan to have M.M.'s maternal grandmother pick up M.M. once she was arrested and taken to the police station—that is, the very person with whom M.M. was then placed under the supervision of the Department. Thus, there was no evidence for the second allegation that A.W. had created a substantial risk of physical harm by failing to provide for M.M. once she was incarcerated.

Based on the circumstantial evidence of her involvement in prostitution while M.M. was left alone with her pimp, the court found by a preponderance of the evidence that all the allegations in the petition were true (including the allegation that A.W. had failed to make an appropriate plan for M.M.), declared M.M. a dependent child of the court and removed him from the custody of A.W. under a general suitable placement

6

order but with release to the maternal grandmother approved. The court ordered reunification services for A.W. consistent with the Department's recommendations.[6]

## DISCUSSION

1. *The Juvenile Court Violated A.W.'s Statutory Right To Be Present at the Contested Jurisdiction/Disposition Hearing*

Penal Code section 2625, subdivision (d), prohibits adjudicating a child a dependent of the juvenile court pursuant to section 300, subdivision (b), without the physical presence of an incarcerated parent unless the parent has knowingly waived his or her right to appear: "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. . . . [N]o petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding."

The Supreme Court in *In re Jesusa V.* (2004) 32 Cal.4th 588, 622, which considered that portion of Penal Code section 2625, subdivision (d), relating to a proceeding to terminate parental rights under section 366.26, confirmed that the reference in the statute to the "physical presence of 'the prisoner *or* the prisoner's attorney'" did not mean only the presence of the incarcerated parent's lawyer was required. Analyzing

---

[6] A.W. was allowed full day, unmonitored visitation with M.M. at the six-month review hearing in December 2014, including overnight visits if the initial unmonitored visits went well. In addition, the Department was granted discretion to bring the matter back to the court before the scheduled 12-month review hearing to request a home-of-parent order.

the legislative history of the provision, the Supreme Court held the word "or" in this phrase is properly given a "conjunctive meaning": "These materials reveal a strong legislative interest in enabling the prisoner to attend the hearing, an interest that would be undermined by interpreting the statute to make the attorney's presence sufficient in every case." (*Ibid.*)[7]

A.W.'s right under Penal Code section 2625, subdivision (d), to be present at the contested jurisdiction/disposition hearing was invoked by her counsel at the outset of the proceedings, as the Department concedes. Yet the juvenile court elected to conduct the hearing in A.W.'s absence over her counsel's objection. That decision is particularly troublesome because nothing suggested the court needed to proceed immediately to adjudicate the petition and craft a disposition order: M.M. had been placed with his maternal grandmother prior to the scheduled hearing date, so a continuance would not have been destabilizing or otherwise contrary to his interests (cf. § 352 [authorizing continuance of dependency hearings, provided "no continuance shall be granted that is contrary to the interest of the minor"]); the court's concern about the ineffectiveness of an order requiring A.W.'s presence because she was housed in another county was based on incomplete information about A.W.'s status, which the court made no effort to verify or supplement, and was insufficient in any event to justify disregard of Penal Code section 2625's clear mandate; and neither the social worker nor any other individual was present to testify at the hearing, so there was no issue of witness inconvenience. Simply put, the court erred.

2. *Proceeding To Adjudicate M.M. a Dependent of the Court Without A.W. Being Present Was Not Harmless Error*

The Supreme Court in *In re Jesusa V., supra*, 32 Cal.4th 588 held violation of Penal Code section 2625, subdivision (d), was not jurisdictional and, therefore, not

---

[7] The *Jesusa V.* Court held an incarcerated parent has no due process right, independent of Penal Code section 2625, to attend a dependency hearing at which his or her lawyer was present. (*In re Jesusa V., supra*, 32 Cal.4th at pp. 625-626.)

reversible per se.  The Court explained, "[W]e have regularly applied a harmless-error analysis when a defendant has been involuntarily absent from a criminal trial.  [Citation.] We do not believe the Legislature intended a different result in the analogous circumstance here, when a prisoner is involuntarily absent from a dependency proceeding." (*Jesusa V.*, at p. 625.)  The Court concluded the familiar *Watson* harmless error standard should be applied (*ibid.*)—that is, reversal is not required unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see generally *In re Celine R.* (2003) 31 Cal.4th 45, 59-60 [harmless error doctrine applies in dependency cases; dependency court order should not be set aside unless it is reasonably probable the result would have been more favorable to the appealing party but for the error].)

Acknowledging (apparently) the juvenile court conducted the jurisdiction/ disposition hearing in violation of A.W.'s right to be present, the Department contends her absence had no prejudicial effect.  The Department explains A.W. insisted she was not soliciting for prostitution; Keven L. was her boyfriend and not also her pimp; the police officers lied when they said Keven L. had admitted A.W. was working as a prostitute and he was her pimp; and, even if she had been soliciting, M.M. was being cared for by Keven L. and had not been placed at risk.  That theory of the case, the Department continues, was documented in the Department's reports and argued to the juvenile court by her counsel.  A.W. does not suggest she could have presented any additional evidence had she been present at the hearing;[8] accordingly, the Department

---

[8]     Keven L. had apparently disappeared by the time of the jurisdiction/disposition hearing and was not available to testify, as A.W.'s counsel explained to the juvenile court.  The Department notes, however, although A.W. questioned the veracity of the police report, her counsel did not call the reporting officer to testify or cross-examine the social workers who had prepared the detention and jurisdiction/disposition reports.

Counsel's tactical decisions do not affect our conclusion as to the potential significance of A.W.'s live testimony.  It was certainly reasonable to conclude the police

9

reasons, because the court's jurisdiction findings and disposition order were amply supported by the written record, the court's failure to ensure she was transported from jail to the hearing did not prejudice her.

The Department's position ignores the vital role that live testimony plays in a court's assessment of credibility and its evaluation of conflicting evidence: "Oral testimony of witnesses given in the presence of the trier of fact is valued for its probative worth on the issues of credibility, because such testimony affords the trier of fact an opportunity to observe the demeanor of witnesses. [Citation.] A witness's demeanor is '"part of the evidence"' and is 'of considerable legal consequence.'" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358.) Without hearing directly from A.W. and assessing her demeanor, the juvenile court rejected her account of the events of May 7, 2014—she was interviewing for a job while her boyfriend babysat her child—and found she was, in fact, soliciting for prostitution and, while doing so, had left her young son in the care of her pimp, circumstances that created a substantial risk of physical harm to M.M. because, as the Department phrases it in its respondent's brief, "of the oftentimes dangerous and violent events that take place in circumstances such as these."

We, like the juvenile court, have only read the Department's account of A.W.'s story. We have not seen or heard her testify. But if her oral testimony were believed, there is no doubt the result of the challenged proceedings would have been more favorable to her. On this record, we cannot conclude the juvenile court's error in proceeding in violation of A.W.'s right to be present at the hearing was harmless.

We recognize the general rule in dependency cases that the juvenile court's exercise of jurisdiction over a child will be upheld if substantial evidence supports any one of the statutory bases for jurisdiction enumerated in the petition. (See, e.g.,

officer would not have admitted he fabricated evidence—A.W.'s theory of the case. Thus, there was nothing to be gained by calling him as a witness. And the social workers simply relied on the police report for their description of the events surrounding A.W.'s arrest.

10

*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Under this principle a remand would be unnecessary if the court's finding under section 300, subdivision (g), were supported by substantial evidence since Penal Code section 2625, subdivision (d), does not apply to an allegation that the parent has been incarcerated and cannot arrange for the care of the child.[9] However, the record is devoid of any such evidence. To the contrary, A.W. contacted M.M.'s maternal grandmother shortly after being arrested to arrange for M.M. to stay with her; the Department approved the maternal grandmother's home prior to the jurisdiction/disposition hearing; and M.M. was actually living with his maternal grandmother at the time of the hearing. Unquestionably A.W.'s plan for M.M. was appropriate since both the juvenile court and the Department agreed M.M. should continue to reside with his maternal grandmother while A.W. received family reunification services. It was error for the juvenile court to sustain the count g-1 allegation in the Department's petition.

---

[9] The petition, which alleged that A.W. had been incarcerated and "failed to make an appropriate plan for the child's ongoing care and supervision," rather than that she was unable to do so, misstated somewhat the proper elements for exercising jurisdiction under section 300, subdivision (g). As the Court of Appeal explained in *In re Aaron S.* (1991) 228 Cal.App.3d 202, 208, "[S]ection 300, subdivision (g) applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child." (See *In re Monica C.* (1995) 31 Cal.App.4th 296, 305 ["section 300, subdivision (g), requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration"]; see generally *In re Summer H.* (2006) 139 Cal.App.4th 1315, 1334.)

## DISPOSITION

The jurisdiction findings and disposition order are reversed.  The matter is remanded for a new hearing at which A.W. has the opportunity to be present and testify and for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.


We concur:


ZELON, J.


IWASAKI, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B257860<br><br>(Los Angeles County<br>Super. Ct. No. DK04990) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>A.W.,<br><br>   Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in this case filed April 21, 2015 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
   PERLUSS, P. J.              ZELON, J.              IWASAKI, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2