Filed 2/10/21  In re G.G. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re G.G., a Person Coming Under the Juvenile Court Law. | |
| | D077948 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519977) |
| v. | |
| ROSA C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Reversed and remanded with instructions.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel and Jesica N. Fellman, Deputy County Counsel, for Plaintiff and Respondent.

Rosa C. (Mother) appeals from a Welfare and Institutions Code section 366.26[1] hearing at which the juvenile court terminated her parental rights over two-year-old G.G., found no applicable exceptions to the termination of parental rights, and referred G.G. to the San Diego County Health and Human Services Agency (Agency) for adoptive placement. Mother contends the court reversibly erred in proceeding with the contested section 366.26 hearing in her absence. She was incarcerated at the time of the hearing and did not waive her right to participate under Penal Code section 2625. Mother's counsel, who was present at the hearing, requested a continuance so that Mother could participate, and further, objected to a termination of parental rights. The Agency concedes the juvenile court's error but argues the error was harmless. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has a history of serious mental illness, including schizoaffective disorder bipolar type and severe depression. Her conditions would stabilize when she took her prescribed medication, but Mother had poor medication adherence. She was prone to mental health episodes or crises when she was not taking her medication. As a teenager, Mother also experimented with different illicit drugs.

In 2018, Mother was raped and became pregnant. In November 2018, she was hospitalized in a mental health facility for suicidal ideation. During the last few months of her pregnancy, Mother lived with her mother, the maternal grandmother (Grandmother); received prenatal care and psychiatric treatment; and took her medication. Grandmother reported that

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

2

Mother acted "fine" and "normal" when she was taking her medication and that Mother was happy at the thought of having a baby.

In February 2019, Mother gave birth to a healthy girl, G.G. Mother exhibited concerning behaviors in the hospital, did not provide appropriate care for the baby, and appeared depressed and/or overwhelmed. The hospital placed her on a 14-day psychiatric hold due to decompensating mental health. The Agency filed a petition on behalf of G.G., alleging the child was at significant risk of serious physical harm due to Mother's mental illness and inability to provide regular care. (§ 300, subd. (b).) Mother told the assigned social worker that she had stopped taking her medication and did not believe she needed to take it anymore. The juvenile court detained G.G. in foster care and granted Mother liberal supervised visits.

In late February, Mother acknowledged to the Agency that she suffered mental health issues yet maintained that she could care for G.G. Mother was receiving weekly psychiatric treatment and taking her medication. Grandmother provided emotional and financial support to Mother and encouraged Mother to take her medication.

In April 2019, the court made a true finding on the petition, continued G.G.'s placement in foster care, and ordered reunification services for Mother. G.G. could not be placed in Grandmother's home at the time because Mother was also living there.

During the ensuing six-month period, Mother had weekly supervised visits with G.G., often accompanied by Grandmother. Mother was frequently observed holding her child but struggled to recognize and respond to the baby's cues. When the baby cried, Mother appeared overwhelmed; she was further agitated by the social worker's presence during visits. Mother was able to meet her baby's needs when guided by Grandmother.

3

Mother made some, but insubstantial, progress in her services. She enrolled in KIVA for drug treatment, but self-discharged from the program one or two days later. Despite participating in individual therapy and receiving psychiatric treatment, Mother suffered three mental health episodes that required her admittance to a mental health facility. At one point, Mother began renting a room on her own, yet before long was asked to leave the home for using drugs and alcohol. In October 2019, Mother began staying at a sober living facility. In the same timeframe, G.G. was placed in the home of Grandmother, where the child continuously lived thereafter.

In November 2019, following a contested six-month review hearing at which both Mother and Grandmother were present, the court terminated reunification services and set a section 366.26 permanency planning hearing.

Subsequently, Mother obtained stable housing, managed her mental health symptoms, and continued participating in supervised visits with G.G. Mother was preparing for G.G. to be returned to her care and believed that their visits were going well. The Agency reported that Mother played with her daughter and performed caregiving tasks at Grandmother's direction, but the child primarily looked to Grandmother for comfort and reassurance.

In early March 2020[2] at the scheduled section 366.26 hearing, the Agency requested a 30-day continuance so that it could further assess the best permanent plan for G.G. Mother and Grandmother were present at this hearing. The Agency was considering whether a plan of guardianship would be in the child's best interest. G.G.'s counsel (minor's counsel) supported a continuance to see whether guardianship might be appropriate. The court granted the continuance request and set a new hearing date in April. Later,

---

[2]     Further unspecified date references occurred in 2020.

the April hearing date was reset to July 14 due to the COVID-19 global pandemic and related court disruptions.

The Agency submitted an addendum report, recommending adoption as G.G.'s permanent plan. According to this report, Mother last visited with G.G. in late May 2020, when Mother accompanied her daughter to a medical appointment. Two days after the visit, Mother had "what appeared to be difficulty with her mental health," allegedly broke the windows of her apartment, and threatened the responding law enforcement officers. The officers shot Mother in the abdomen during an altercation. She was admitted to a hospital in critical condition and needed about five surgeries, with the last one scheduled for late June. When she was not in the hospital, Mother was in custody at Las Colinas Detention and Reentry Facility (Las Colinas).

On July 9, the juvenile court issued an order directing the sheriff to produce Mother for the section 366.26 hearing (order to produce).

On July 14, Mother was not produced or present for the hearing.[3] The court and counsel discussed Mother's situation and that there appeared to be a telephone at the hospital, which she could access. The court confirmed that notice of the hearing had been effectuated but believed that Mother could not be produced due to her medical condition. Mother's counsel requested a continuance, and there was no objection. Minor's counsel indicated that then one-year-old G.G. would suffer no detriment and would be "relatively unaffected" by a continuance. The court continued the hearing and issued another order to produce Mother on the date set in August.

On August 10, the date of the rescheduled section 366.26 hearing, Mother was, once again, not produced or present. Grandmother was also

_____

[3] Because of COVID-19 restrictions, juvenile court hearings were conducted virtually. Party appearances were made by video or telephone.

5

absent from the proceeding. Mother's counsel (Regina Ryu) requested a continuance so that Mother could participate in the hearing. Ryu recounted her client's circumstances—Mother was incarcerated but being moved "back and forth" between the jail and hospital, and "the hospital was not even able to tell me whether [Mother] is staying there."

Attorney Ryu stated that she did not have "an impression one way or the other" whether Mother was physically capable of making contact. Ryu "simply" had no information about Mother's status. The juvenile court nonetheless believed that Mother was not precluded from contacting counsel if she wished to. The court searched certain records and confirmed that Mother was an "inmate at Las Colinas" but "for whatever reason," had not been made available to attend the hearing. Based on counsel having made herself available to be contacted, the juvenile court denied the request for a continuance.

The court proceeded to receive the Agency's reports in evidence without objection. There was no live testimony. The Agency argued in favor of terminating parental rights and selecting adoption as G.G.'s permanent plan. Minor's counsel supported adoption by Grandmother, noting that Mother would continue to have a relationship with G.G. if her mental health was stable. Attorney Ryu asserted an objection on Mother's behalf to terminating parental rights. The court found G.G. was adoptable and there were no applicable exceptions to terminating parental rights; terminated parental rights; and referred G.G. to the Agency for adoption.

Mother's appeal followed.

DISCUSSION

Mother contends the juvenile court's proceeding with the section 366.26 hearing in her absence violated Penal Code section 2625. It is undisputed Mother did not waive her right to be present at the hearing. Additionally, Mother argues the error was not harmless because she was unable to meaningfully present her position, personally or through counsel.

The Agency concedes the court erred in proceeding with the contested section 366.26 hearing but argues the error was harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

"A proceeding may not be held under . . . Section 366.26 of the Welfare and Institutions Code . . . without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by . . . a designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding. (Pen. Code, § 2625, subd. (d); *In re Jesusa V.* (2004) 32 Cal.4th 588, 623-624 (*Jesusa V.*) [interpreting statutory provision to mean that *both* the prisoner and the prisoner's attorney must be present].)

Although dependency cases should be resolved expeditiously, the juvenile court may grant a continuance for good cause and if it is not contrary to the child's interest. (§ 352; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1464-1465.)

We conclude the juvenile court erred in conducting the contested section 366.26 hearing in Mother's absence, as the Agency acknowledges. In July, the court seemingly recognized the need to secure Mother's presence at the hearing, yet in August decided to move forward anyway despite her absence and having no additional information on her status. The rationale

7

for proceeding was convoluted. If Mother was physically incapable of contacting counsel, then it did not matter whether counsel had made herself available to be contacted. Even if Mother could contact counsel, that did not explain why the *sheriff* had not complied with the order to produce her.[4] The court confirmed Mother was a prison inmate.

Moreover, a continuance would not have been contrary to G.G.'s interest, and good cause existed for a continuance. The child was in a long-term placement with Grandmother, who was prepared to become an adoptive parent *or* legal guardian. Mother did not execute a "knowing waiver" of her right to be present (Pen. Code, § 2625, subd. (d)). There is nothing in the record to suggest that Mother was purposely delaying the case. It bears emphasizing that her parental rights were at stake. Prior to the incident with law enforcement, Mother consistently appeared at court hearings and indicated her desire to reunify with G.G. A continuance should have been granted.

The parties dispute the proper disposition of the case given the juvenile court's error. Mother argues she was deprived of due process and the case must be reversed per se, or, reversed under the standards set forth in *Chapman v. California* (1967) 386 U.S. 18, or *Watson, supra,* 46 Cal.2d 818.

The Agency argues the court's error was harmless under *Watson.* The Agency submits that parental rights were properly terminated because Mother failed to demonstrate the applicability of the beneficial relationship exception to termination of parental rights (§ 366.26, subd. (c)(1)(B)(i)).

We need not determine whether Mother's due process rights were violated because we are able to resolve this case under *Watson.*

---

4    Mother points out on appeal that she did not even need to be physically transported to court; she would have participated remotely.

8

Our Supreme Court in *Jesusa V., supra,* 32 Cal.4th 588, held that a violation of Penal Code section 2625, subdivision (d), was not jurisdictional and, therefore, not reversible per se. The court applied a harmless error analysis pursuant to *Watson.* (*Jesusa V., supra,* at p. 625; see also *In re M.M.* (2015) 236 Cal.App.4th 955, 963-964 (*M.M.*) [applying *Watson* and finding prejudice where there were disputed facts and the mother could not testify due to her absence].)

Under *Watson*, reversal is required if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836; see generally *In re Celine R.* (2003) 31 Cal.4th 45, 59-60 [discussing propriety of applying the *Watson* harmless error test in dependency cases].)

At a section 366.26 hearing, once the juvenile court finds by clear and convincing evidence that the child is likely to be adopted within a reasonable time, the court is required to terminate parental rights and select adoption as the permanent plan, unless the parent shows that termination of parental rights would be detrimental to the child under one of several statutory exceptions. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) One of these statutory exceptions is the beneficial parent-child relationship exception to adoption, which applies when it would be detrimental to the child to terminate parental rights in that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)[5] Mother had the

---

5 "Regular visitation exists where the parents visit consistently and to the extent permitted by court orders." (*In re I.R.* (2014) 226 Cal.App.4th 201, 212.) "Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption." (*In re C.F.* (2011) 193 Cal.App.4th 549, 554 (*C.F.*).)

burden of producing evidence to establish this exception. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).)

If a parent meets his or her burden to establish the requirements of the beneficial relationship exception, the juvenile court may choose a permanent plan other than adoption if it finds the beneficial relationship to be "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B); see *Bailey J.*, *supra*, 189 Cal.App.4th at p. 1315.) If the beneficial relationship exception applies, the court "shall order that the present caretakers or other appropriate persons shall become legal guardians of the child . . . ." (§ 366.26, subd. (c)(4)(A).)

On the record before us, we cannot conclude the juvenile court's proceeding with the section 366.26 hearing in violation of Mother's right to be present was harmless. In the Agency's report filed March 26, the assigned social worker noted that he would "recommend adoption *or guardianship*." (Italics added.) For most of G.G.'s life, Mother visited with the child on a weekly basis except when Mother was in mental health or drug treatment. The Agency did not dispute Mother's love for her daughter. Mother also had a close relationship with Grandmother, with whom G.G. was placed after October 2019. If Mother had been present at trial, she could have testified about the nature of her relationship with G.G. Further, Mother could have described the extent of her medical incapacity after May. There is a reasonable likelihood that she would have obtained a more favorable result, e.g., a legal guardianship, if she had been present at trial. "We, like the juvenile court, have only read the [Agency's] account of [Mother's] story." (*M.M.*, *supra*, 236 Cal.App.4th at p. 964.)

The Agency's position essentially ignores any evidence Mother would have presented, had she been allowed to do so. Attorney Ryu's inability to

specifically argue the applicability of the beneficial relationship exception underscores the importance of securing Mother's presence at the contested hearing; counsel had been unable to learn any new information about her client and expressly requested a continuance. Notably, Grandmother was absent as well and therefore unable to provide information or testimony about the mother and child. Under the circumstances, the court reversibly erred in proceeding with trial. (See *M.M.*, *supra*, 236 Cal.App.4th at p. 964 [live testimony plays a "vital role" in court's assessment of credibility and its evaluation of conflicting evidence].)

## DISPOSITION

The juvenile court's order terminating parental rights and referring G.G. for adoption is reversed. The case is remanded for the court to hold a new section 366.26 hearing consistent with the views expressed in this opinion.

BENKE, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

11